The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and an employer-employee relationship existed between the parties at all relevant times.
2. One hundred sixty (160) pages of medical, employment, and Industrial Commission file documents are stipulated into evidence by the parties.
3. The issue for determination is whether Plaintiff contracted a compensable occupational disease, and if so, the compensable consequences.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of hearing, Plaintiff was a 46 year old female approximately 5 feet 5 inches tall weighing 300 to 350 pounds. Plaintiff had maintained this weight for the previous 10 years. Plaintiff is right-handed.
2. Plaintiff began work for Defendant in 1976 and was terminated on September 28, 1994.
3. During the last 10 years she worked for Defendant, Plaintiff primarily worked as a crop puller and reprocesser. A crop puller is required to pull the crop and windpipe out of chickens as they move by on a conveyor belt. A reprocesser is required to pull the crop and windpipe out of a chicken when the reprocessing machine fails to properly extract them.
4. To properly perform her duties as a crop puller and reprocesser, Plaintiff had to constantly and repetitively lift her arms to shoulder height or above to reach the chickens. Reprocessing and crop pulling are production jobs which required that Plaintiff work swiftly.
5. In April 1992, Plaintiff reported to Defendant that she was experiencing constant pain in her left shoulder and arm. No specific traumatic incident or unusual occurrence precipitated the onset of this pain. Plaintiff had been experiencing left shoulder and arm pain for the previous 2 to 3 months before it got so bad that she reported it to Defendant.
6. Plaintiff first sought medical treatment for her left shoulder and arm pain in April 1992. Plaintiff was placed on light duty work restriction and told to work with her arms at waist level. Consequently, Plaintiff began working at the gizzard table, a light duty non-production job which allowed Plaintiff to work at her own pace with her arms at waist level.
7. Plaintiff remained on light duty work restriction at the gizzard table until Defendant terminated her on September 28, 1994. Plaintiff's left shoulder and arm pain made her physically incapable of swiftly and repetitively lifting her arms above her shoulders in order to perform the duties of a crop puller and reprocesser.
8. Plaintiff filed a Form 18 on November 23, 1994.
9. Plaintiff's average weekly wage while employed by Defendant was $189.31, which yields a weekly compensation rate of $126.21.
10. In December 1994, Plaintiff sought medical treatment for her continuing left arm and shoulder pain from Dr. Craig A. Ryder, M.D., an orthopedic surgeon. Dr. Ryder diagnosed Plaintiff's problem as impingement syndrome and bursitis in the left shoulder. Impingement syndrome occurs when the rotator cuff tendon within the shoulder is being irritated while in motion due to swelling and inflammation within the shoulder.
11. The swelling and inflammation within Plaintiff's shoulder which results in impingement syndrome develops due to wear and tear on the shoulder's rotator cuff. Impingement syndrome is aggravated more by overhead work that requires constant lifting of the arm at or above the shoulder level. Repetitive work done at or above the shoulder level works the rotator cuff and tends to aggravate and cause swelling and inflammation in the shoulders indicative of impingement syndrome. Generally, work done with the arms below shoulder level, especially at waist level, is not bothersome.
12. Plaintiff's job as a crop puller and reprocesser required her constantly and repetitively to keep her arms above shoulder level in order to reach up and pull crops and windpipes out of the chickens. The repetitive nature of Plaintiff's work over time resulted in the development of the occupational diseases of impingement syndrome and bursitis in Plaintiff's left shoulder, and was a condition peculiar to her employment. Given the conditions and repetitive nature of Plaintiff's work duties, Plaintiff's job placed her at an increased risk of contracting impingement syndrome and bursitis of the shoulder as opposed to the general public.
13. From April 1992 until September 28, 1994, Plaintiff was never temporarily totally disabled as a result of impingement syndrome and bursitis because she was capable of performing the light duty job of working at the gizzard table.
14. Neither Plaintiff's congenital heart condition of aortic stenosis, her edema in her legs, nor her obesity had any effect on the development of the occupational diseases of impingement syndrome and bursitis in Plaintiff's left shoulder.
15. After Plaintiff was terminated by Defendant, she applied for and was awarded Social Security disability benefits due to her aortic stenosis and edema. Plaintiff was not awarded Social Security disability benefits based upon her compensable occupational diseases of impingement syndrome and bursitis of the left shoulder. In April 1995, Plaintiff began receiving $596.00 per month in Social Security disability benefits.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff contracted impingement syndrome and bursitis, which are compensable occupational diseases within the meaning of N.C. GEN. STAT. § 97-53 (13). These conditions were peculiar to her employment, and the duties of her job placed Plaintiff at an increased risk of contracting these occupational diseases as opposed to the general public.
2. As a result of developing these compensable occupational diseases, Plaintiff was never totally incapacitated from work and is not entitled to receive any temporary total disability benefits. N.C. GEN. STAT. § 97-29.
3. Defendant shall pay all Plaintiff's medical expenses to the extent such treatment tended to effect a cure, give relief, or lessen Plaintiff's disability. N.C. GEN. STAT. §§ 97-2 (19),97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay all medical expenses incurred by Plaintiff as a result of developing these compensable occupational diseases.
2. Defendant shall pay the costs.
***********
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
LKM/bjp